IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2009 Session

## MICHAEL HOOVER v. STATE OF TENNESSEE

Direct Appeal from the Circuit Court for Tipton County
No. 5462      Joseph H. Walker, Judge

No. W2008-01938-CCA-R3-PC   -   Filed February 16, 2010

Petitioner, Michael Hoover, appeals the post-conviction court's dismissal of his post-conviction petition in which Petitioner alleged that his trial counsel rendered ineffective assistance of counsel in connection with the entry of his plea of guilty, and that his guilty plea was not voluntarily or knowingly entered. After a thorough review we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which J. C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

J. Barney Witherington, IV, Covington, Tennessee, for the appellant, Michael Hoover.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Tyler Burchyett, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Although the indictments are not part of the record on appeal, we glean from the transcript of the guilty plea submission hearing that Petitioner was indicted in case no. 5462 for first degree premeditated murder; in case no. 5461 for unlawful possession of a weapon as a felon and possession of a weapon with an altered serial number; and in case no. 5460 for possession of a Schedule VI controlled substance and possession of drug paraphernalia. On August 21, 2007, Petitioner entered a plea of nolo contendere to the lesser included offense

of second degree murder, a Class A felony, in case no. 5462. The trial court imposed the agreed upon sentence of fifteen years as a Range I, standard offender. As part of the negotiated plea agreement, the State agreed to enter a nolle prosequi to the charges in case nos. 5461 and 5460.

At the guilty plea submission hearing, the State offered a factual basis for the plea which included the potential testimony of multiple witnesses. Chattis Hall, Terry Currin, Brandon Flowers, Yoshida Taylor, Nakia Johnson, and Joy White were present at a convenience store on September 12, 2006. These witnesses would testify that Petitioner drove up to the store, exited his vehicle, and approached the victim, Ivan Williams. The two men exchanged words, and then Petitioner shot Mr. Williams in the chest. Mr. Williams ran, with Petitioner in pursuit, and Petitioner shot at Mr. Williams two more times. Petitioner returned to his car and drove away. Ms. Taylor would testify that Petitioner told Mr. Williams immediately before the shooting, "You all quit playing me for a weak-ass boy." Ms. White would testify that Petitioner was armed with a handgun.

Kat Smith, Petitioner's aunt, and Frances Smith, Petitioner's cousin, would testify that Petitioner arrived at Ms. Smith's home on September 12, 2006, and said that he had just shot Mr. Williams. Petitioner said that Mr. Williams was not "going to brag about what he did to [Petitioner] no more." Petitioner had previously told Mr. Smith that he was tired of Mr. Williams "messing with him," and that Petitioner would kill Mr. Williams on the birthday of Mr. Williams' mother. Petitioner grabbed the keys to Mr. Smith's vehicle and left.

Deputy Harold Brown, with the Tipton County Sheriff's Department, would testify that he responded to a report of a shooting victim at Baptist Hospital on September 12, 2006. Petitioner approached Deputy Brown in the hospital's parking lot and told Deputy Brown that he had shot the victim. Agent Terry Arney, with the Tennessee Bureau of Investigation would testify that based on the testing of Petitioner's gun and a cartridge from the gun, Petitioner was standing between twelve and thirty-six inches from the victim when he discharged his weapon. Dr. Mary Goldsby, with the Medical Examiner's Office would testify that the cause of the victim's death was a gunshot wound to the chest.

Petitioner gave several statements to the investigating officers. In his final statement on September 14, 2006, Petitioner stated:

> [a]bout a month ago I saw Ivan Williams go – Ivan Williams pistol whipped me and shot me – shot at me under the water tower. Since that time people have been telling me that Ivan was going to kill me. We were fighting over a girl. . . . Sometime after September 1 Little Bubba . . . brought me a chrome .9mm I bought from him for fifty dollars. . . . On [September 12, 2006], I went

to the Thrifty Mart, and it was dark outside, but I don't know what time it was. I went to get some cigars and cigarettes. Got out of my car . . .. I walked towards the store and saw Ivan coming around the yellow car beside the building. He had both his hands full. Ivan started walking towards me and said, "What's up, Michael?" I said, "Nothing man. I'm not with it tonight." I was turning, walking toward the store, and I heard a gunshot. I pulled and fired my gun at Ivan. It was in my right hand – my right front pocket. I did not know I had hit Ivan. Ivan was running across the front of the store. I chased Ivan. I thought that Ivan was getting a pistol, so I decided to chase him and shoot him. . . . After I fired the gun, it jammed. I tried to shoot again, but my gun was jammed. While I was chasing Ivan, I was trying to fire the gun. . . . Went back to my car and I left the store.

Petitioner testified that he was thirty-one years old and had completed the eleventh grade in high school. Petitioner acknowledged that he had reviewed the terms of his plea agreement with his trial counsel and understood those terms. The trial court explained the constitutional rights Petitioner was foregoing by entering a plea of nolo contendere, including the right to present a defense of self-defense, and Petitioner stated that he understood. Petitioner also indicated that he understood that he was entering a plea of nolo contendere to second degree murder with a sentence of fifteen years. Petitioner stated that he was satisfied with his trial counsel's assistance during the negotiation of his plea agreement. At the conclusion of the hearing, the trial court found that Petitioner was voluntarily and knowingly entering his plea of guilty to the charged offense and accepted Petitioner's plea.

## II. Post-Conviction Hearing

Petitioner testified that he was initially represented by retained counsel at the preliminary hearing. After the hearing, the Public Defender's Officer was appointed to represent him. Petitioner stated that he told Billy Dan Huggins, an investigator with the Public Defender's Office, that he only discharged his weapon once on the night of the incident, and there were four men shooting at him. Petitioner said that he did not provide his trial counsel with a list of potential witnesses because all of the witnesses were members of the victim's family and would testify against Petitioner. Petitioner acknowledged that the testimony of his female cousin, Pumpkin Williams, would not have been helpful because Ms. Williams told the investigating officers that Petitioner "pulled out the gun and shot . . . and kept on shooting."

Petitioner stated that the night that the victim "pistol whipped" him, Petitioner took out a warrant for the victim's arrest. Shortly thereafter, the victim stood at the side of Petitioner's house and discharged his weapon. Petitioner stated that he signed the paperwork

to obtain a restraining order. Petitioner said that trial counsel checked on the warrant and restraining order and discovered that they had not been issued. Petitioner stated that he wanted to show a jury that he had taken steps to protect himself before the shooting. Petitioner said that the sheriff would testify on his behalf about his altercation with the victim.

Petitioner said that he did not initially want to accept a plea agreement that included a sentence of fifteen years. Petitioner stated that trial counsel told him that if he served seven years and did not get into trouble, he would be paroled. Petitioner said that he discovered after he was incarcerated that he would have to serve one hundred percent of his sentence. Petitioner stated that he would not have entered a plea of nolo contendere if he had known that he would not be eligible for parole in seven years. Petitioner said that he could only read "small words," and that trial counsel was aware that Petitioner was illiterate. Petitioner said that his cell mate read the court documents to him.

Trial counsel testified that he was appointed to serve as co-counsel after the preliminary hearing. Trial counsel stated that he reviewed Petitioner's mental health records to ascertain if there was anything that would impact Petitioner's understanding of his case. Trial counsel said that Petitioner had previously been diagnosed with paranoid schizophrenia, and his I.Q. scores ranged from 68 to 72. Petitioner underwent a mental evaluation prior to the guilty plea submission hearing and was found competent to assist in his defense. Trial counsel stated that Petitioner understood their discussions although Petitioner had difficulty comprehending that an altercation with the victim some time prior to the shooting would not support Petitioner's claim of self-defense. Trial counsel said that Petitioner "felt deeply justified in shooting" the victim. Trial counsel stated that he verified that Petitioner had taken out a warrant against the victim but the warrant had not been executed at the time of the shooting.

Trial counsel stated that he explored the possibility of presenting a defense based on Petitioner's self-defense claim. Trial counsel said that bullets not matching Petitioner's weapon were found at the scene, but there was no way to ascertain whether the bullets had been fired at Petitioner or were even fired on the night of the incident. Ultimately, however, the fact that the victim was unarmed when Petitioner shot him weakened Petitioner's claim of self-defense.

Trial counsel recollected discussing with Petitioner that he would have to serve at least eighty-five percent of his fifteen-year sentence, or twelve and one-half years. However, trial counsel told Petitioner that there was no guarantee that he would be paroled at that time. Trial counsel stated that Petitioner was aware that he could receive a life sentence if convicted of first degree premeditated murder, but Petitioner focused on the possibility of

being convicted of a lesser included offense such as voluntary manslaughter.  Trial counsel said that the State refused to agree to a sentence involving less than fifteen years.  Trial counsel stated that Petitioner eventually understood the difficulties in presenting a self-defense claim based on the facts of his case, and agreed to enter a plea of nolo contendere to second degree murder.

## III.  Standard of Review

To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence.  T.C.A. § 40-30-210(f).  However, the trial court's application of the law to the facts is reviewed *de novo,* without a presumption of correctness.  *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).  A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review.  *Id*.; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he or she must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases."  *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975).  In addition, he or she must show that counsel's ineffective performance actually adversely impacted his defense.  *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984).  In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics.  *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).  The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful.  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.  Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time.  *Id*. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel.  *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).  That is, a petitioner must not only show that his or her counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner.  *Id*.  Failure to satisfy either prong will result in the denial of relief.  *Id*.  Accordingly, this Court need not address one of the components if the petitioner fails to establish the other.  *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.  In cases involving a guilty plea, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he or she would not have pleaded guilty but would have insisted on going to trial.  *See*

*Hill v. Lockhart*, 474 U.S. 42, 59, 106 S. Ct. 366, 370 (1985); *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

## IV. Ineffective Assistance of Counsel

On appeal, Petitioner argues that his counsel's assistance was ineffective because he did not explain that Petitioner would have to serve one hundred percent of his sentence for second degree murder. Trial counsel testified at the post-conviction hearing that he explained to Petitioner that he would be sentenced to fifteen years in exchange for his plea and that at a minimum, Petitioner would have to serve eight-five percent of his sentence, or twelve and one-half years. Trial counsel informed Petitioner, however, that there was no guarantee that Petitioner would not have to serve one hundred percent of his sentence. Trial counsel said that it was his belief that Petitioner understood. Trial counsel also said that Petitioner ultimately understood the difficulties in successfully presenting a self-defense claim, and that Petitioner would be sentenced to life imprisonment if he was convicted of first degree premeditated murder.

The post-conviction court accredited the testimony of trial counsel and found that Petitioner had failed to show that his trial counsel's assistance was deficient in explaining to Petitioner the ramifications of the agreed upon fifteen-year sentence. Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's finding that Petitioner failed to establish that trial counsel provided ineffective assistance of counsel in connection with the negotiation and entry of Petitioner's plea of nolo contendere. Petitioner is not entitled to relief on this issue.

## V. Entry of Guilty Plea

Petitioner argues that his plea was unknowing and involuntary because he was unaware of the consequences of his plea at the time he entered it. Petitioner points out that he is unable to read or write which interfered with his relationship with trial counsel, and he contends that trial counsel took no steps to insure that Petitioner understood the plea negotiation process. Petitioner argues that his misunderstanding of the release eligibility date for his second degree murder sentence demonstrates that he did not knowingly enter his plea.

When an accused enters a plea of guilty or nolo contendere, constitutional considerations mandate that the plea be voluntarily, understandingly and knowingly entered. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1713 (1969); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b), Tenn. R. App. P. 3(b). By entering a plea, the defendant waives certain constitutional rights including the privilege against self-incrimination, the right to a trial by jury, and the right to

confront witnesses. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1714. The defendant's waiver of these constitutional rights may not be presumed from a silent record. *Id*. The trial court must ascertain if the defendant fully understands the significant consequences of his or her plea. *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). The trial court may consider a number of factors including the defendant's relative intelligence, his or her familiarity with criminal proceedings, whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about options, the advice give by counsel and the trial court about the charges against the defendant and the penalty to be imposed, and the defendant's reasons for pleading guilty. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Trial counsel testified that he reviewed Petitioner's mental health records to ascertain if there were any signs that Petitioner may have trouble comprehending the trial and plea negotiation process. Trial counsel determined that Petitioner's IQ score ranged between 68 and 72. Trial counsel had Petitioner undergo a mental evaluation prior to the plea submission hearing, and Petitioner was found competent to stand trial and participate in his defense. Trial counsel stated that he explained Petitioner's options, and Petitioner understood that he could be sentenced to life if he were convicted of first degree premeditated murder. Although initially resistant to trial counsel's explanation, Petitioner eventually understood that a self-defense claim would likely not be successful in view of the fact that Petitioner shot the unarmed victim some time after they had engaged in an altercation. Petitioner testified at the plea submission hearing that he had completed the eleventh grade, that he understood the consequences of his plea, including the agreed upon sentence of fifteen years, and that he was voluntarily entering his plea of nolo contendere to the offense of second degree murder.

The post-conviction court again accredited trial counsel's post-conviction testimony that Petitioner understood his options and that he voluntarily elected to enter a plea of nolo contendere to the lesser included offense of second degree murder. Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's finding that Petitioner knowingly and voluntarily entered his plea of nolo contendere. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

THOMAS T. WOODALL, JUDGE